**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Francisco Duran, | ) | No. CV 06-1060-PHX-JAT |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Jo Anne Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. #10) and Defendant's Cross Motion for Summary Judgment (Doc. #14). The Court now rules on the Motions.

**I.   Procedural and Factual Background**

Plaintiff Francisco Duran filed concurrent applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SIS) on January 7, 2004, alleging inability to work as of January 1, 2004.  These applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on September 9, 2005. The ALJ issued a decision on December 29, 2005 denying Mr. Duran's claims, finding that Mr. Duran was not disabled within the meaning of the Social Security Act (the "Act").  The ALJ's decision became the final decision of Defendant Social Security Commissioner (the "Commissioner") on March 9, 2006, when the Appeals Council found no basis to change the ALJ's decision and denied Mr. Duran's Request for Review.  Mr. Duran filed this action on April 13, 2006, pursuant to 42 U.S.C. §405(g).

Plaintiff is 59 years old, and was 57 years old on his alleged disability onset date. Plaintiff claims he is unable to work because of back pain with any activity, lower extremities pain, and residuals from diabetes, including fatigue. Plaintiff has a sixth-grade education and is not literate in the English language. Plaintiff's past relevant work experience includes: car lot driver, hand packager, fruit picker, loader, general laborer, and warehouse quality controller.

Medical Evidence

Dr. Eduardo Alcantar, treated Mr. Duran from December 22, 2003 to September 12, 2005. In April of 2004, the doctor diagnosed hypertension, hyperlipidemia, and diabetes.

Dr. Malcom McPhee, a consultive examiner, examined Mr. Duran on April 7, 2004. The physical exam was essentially normal. Mr. Duran could squat seventy-five percent of a full squat, hop, and kneel; and he had normal strength in all four extremities. He did have some mild tenderness in his lower lumbar region, bilaterally, but he had normal range of motion in his neck, shoulders, elbows, hands wrists, hips, knees, ankles, and feet. The straight leg raise test was normal and sensation was intact to touch and pinprick in all four limbs. Dr. McPhee diagnosed low back aches with mild facet arthritis at L5-D1 seen on x-ray report, diabetes mellitus, and hypertension.

Dr. McPhee completed a medical assessment form on April 17, 2004 regarding Mr. Duran's ability to perform work activity. The doctor assessed that, in an eight-hour day, Mr. Duran could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand, walk, or sit about six hours, occasionally climb, balance, crouch or stoop, frequently kneel and crawl, and had an unlimited ability to reach, handle, finger, feel, see, hear, and speak. Dr. McPhee assessed no further limitations.

On April 22, 2004, Dr. James Hopkins, a reviewing State agency physician, performed a medical functional assessment of plaintiff's ability to perform work activity. In an eight-hour work day, the doctor assessed that Mr. Duran could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand, walk, or sit for about six hours, and had an

1   unlimited ability to push, pull, or use hand or foot controls.  Dr. Hopkins assessed no further
2   limitations.
3        On June 3, 2004, Dr. W.O. Day, another reviewing State agency physician, performed
4   a medical functional assessment of Mr. Duran's ability to perform work activity.  Dr. Day
5   assessed that Mr. Duran could occasionally lift fifty pounds, frequently lift twenty-five
6   pounds, and stand, walk, or sit about six hours in an eight- hour work day.  Mr. Duran had
7   an unlimited ability to push, pull, or use hand or foot controls.  He could occasionally climb,
8   balance, and stoop, and frequently could stoop, kneel, crouch, and crawl.  Dr. Day assessed
9   no further limitations.
10       Mr. Duran had a MRI on October 10, 2004.  The MRI revealed an approximately 25%
11  vertical height loss of the T12 vertebra, hermangiomas within T10 and L1, disc bulge with
12  facet hypertrophy at L4-5, and, at L5-S1, a disc bulge with facet degeneration and seven
13  millimeter subchondral cyst within the right pars
14       Dr. Huston, an orthopedic surgeon, treated Mr. Duran from  November of 2004 to
15  June of 2005 on referral by Dr. Alcantar.  In November 2004, Dr. Huston indicated that
16  physical therapy had not helped Mr. Duran and recommended injection therapy.  Physical
17  examination was essentially normal, except for a slight reduction in strength and some give-
18  way throughout the upper and lower extremities.  On December 21, 2004, Dr. Huston
19  indicated that Mr. Duran was not a candidate for surgery.  In June 2005, Dr. Huston
20  discharged Mr. Duran with a diagnosis of low back pain and lumbar disc disease.  Dr. Huston
21  declined to assess Mr. Duran's functional ability to work and released him from care with a
22  recommendation that he continue an independent exercise program that he learned in
23  physical therapy.
24       In December of 2004, a nurse practitioner in Dr. Alcantar's clinic, S. Ponce, completed
25  a medical assessment of ability to work form and assessed that plaintiff retained the ability
26  to lift or carry up to ten pounds occasionally, sit for three hours, stand for one hour, and walk
27  for three hours, for a total of three hours on his feet, in an eight-hour day.  Nurse Practitioner
28  Ponce  determined  that  Mr.  Duran  could  sit,  stand,  and  walk  only  intermittently  and

alternatively in an eight-hour work day.  And that Mr. Duran could not use his hands for fine or continuous manipulative tasks, could bend and squat occasionally, but could not crawl, climb, or reach.  S. Ponce further assessed that Mr. Duran was moderately limited from working around unprotected heights, mildly limited from being around moving machinery, driving automobile equipment, exposure to marked changes in temperature or humidity, and had no limitations from exposure to dust, fumes, or gases.  Overall, Nurse Practitioner Ponce found that Mr. Duran's activities would be limited due to moderate to severe pain and fatigue.

## II.    Analysis and Conclusion

Standard

The Court will overturn the Commissioner's decision to deny benefits "only if it is not supported by substantial evidence or is based on legal error."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998).  In determining whether substantial evidence exists to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions.  *Id.*  If sufficient evidence exists to support the Commissioner's decision, the Court cannot substitute its own determination.  *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).  And the ALJ is responsible for resolving conflicts in medical testimony and ambiguities and for determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Mr. Duran raises two issues on appeal from the Commissioner's decision.  First, he argues that the ALJ erred in rejecting the nurse practitioner's opinion without giving specific, legitimate reasons.  Second, he claims the ALJ erred in finding Mr. Duran's testimony not fully credible.

Nurse Practitioner's Opinion

A nurse practitioner is not an "acceptable medical source" under the social security disability regulations. 20 C.F.R. §416.913(a) & (d)(1); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Mr. Duran nonetheless argues that, pursuant to *Gomez*, Nurse Practitioner Ponce should be considered an acceptable medical source and Ponce's disability assessment should be afforded the same weight as a treating physician's. The ALJ therefore could not reject Ponce's determination without listing legitimate and specific reasons.

In holding, under the circumstances of that case, that the nurse practitioner's opinion should carry the same weight as the treating physician's, the *Gomez* court relied on factors not present here. The *Gomez* court found that the plaintiff's chart notes indicated that although the treating physician did not personally examine the plaintiff after a certain point, the nurse practitioner did consult with the physician numerous times regarding the plaintiff's treatment. 74 F.3d at 971. The *Gomez* court held that because the nurse practitioner in that case worked so closely under the supervision of the treating physician, she actually acted as the physician's agent with regard to the plaintiff's treatment. *Id*. And the ALJ therefore properly gave the nurse practitioner's opinion the same weight as a treating physician's.

The current case is distinguishable from *Gomez*. Nurse Practitioner Ponce's progress notes do not indicate that Ponce consulted with or worked closely under the supervision of Dr. Alcantar, the treating physician. In his reply brief, Mr. Duran states, "The doctor, however, is the overseer of the nurse practitioner and supports the function and opinion of his employee. In this case the nurse practitioner completed assessment forms under the supervision of Dr. Alcantar." But Mr. Duran does not cite to any portion of the record or any other authority to support this statement. A bald statement regarding supervision is insufficient to bring this case within the ambit of *Gomez*.

Mr. Duran argues that the ALJ did not give legitimate and specific reasons supported by substantial evidence in the record for rejecting Nurse Practitioner Ponce's opinion as required by *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Because Nurse Practitioner Ponce does not qualify as an acceptable medical source under the *Gomez* agency theory, however, the ALJ did not have to list specific, legitimate reasons for rejecting Ponce's

1   opinion as she would have for a treating physician's opinion.  The Court further finds that the
2   ALJ's opinion is supported by substantial evidence from the record.  The opinion of Dr.
3   McPhee, the examining physician, the observations of Dr. Huston, and the opinions of the
4   State Agency consulting doctors all agree that Mr. Duran is capable of performing past
5   relevant work experience.  It is the ALJ's function to resolve conflicts in medical evidence.
6   *Andrews*, 53 F.3d at 1039.  The Court finds that substantial evidence exists in the record to
7   support the ALJ's resolution of the medical evidence.

8              Mr. Duran's Credibility

9              In his second point, Mr. Duran argues that the ALJ improperly rejected his credibility.
10  When, as here, objective medical findings establish the existence of medical impairment, if
11  a claimant testifies that he or she experiences pain at a higher level, the Commissioner may
12  disbelieve that testimony.    *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006);
13  *Magallanes*, 881 at 755.  But the Commissioner must make a specific and justifiable finding
14  that the claimant's testimony is not credible. *Id*.  The ALJ found Mr. Duran's testimony
15  regarding the extent of his pain and inability to work not fully credible because: the medical
16  evidence did not support Mr. Duran's claims regarding the level of his pain; Mr. Duran
17  claimed he had learned virtually no English, but answered some questions in English at the
18  hearing; and, despite claims of pain while driving, at the time of the hearing, Mr. Duran had
19  been driving as part of his job at a car auction for eight months.  The Court finds that the ALJ
20  provided clear and cogent reasons for partially rejecting the credibility of Mr. Duran and will
21  not reverse the ruling.

22             The Court holds that substantial record evidence supports the ALJ's resolution of the
23  conflicting medical testimony and her credibility determinations.  The ALJ's decision is
24  therefore affirmed.

25             Accordingly,

26             IT IS ORDERED GRANTING Defendant's Cross Motion for Summary Judgment
27  (Doc. #14).

28

1    IT IS FURTHER ORDERED DENYING Plaintiff's Motion for Summary Judgment

2  (Doc. #10).

3    DATED this 25th day of January, 2007.

4

5

6

7

8                                          _____
                                           James A. Teilborg
9
                                           United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28